Anthony M. Livoti, J.
This is a proceeding instituted under article 78 of the CPLR to review and annul the determination of the Commissioner of Hospitals of the City of New York wherein the petitioners were refused the renewal of an annual license to conduct a private proprietary hospital.
A trial of the issues was held before this court pursuant to the direction of the Appellate Division, Supreme Court, Second Department (20 A D 2d 717, revg. 39 Misc 2d 742). Upon this trial, the corporate petitioner, a domestic stock corporation and the owner and operator of Kew Gardens General Hospital, seeks to annul said Commissioner’s determination and to compel him to issue such license.
This proceeding raises the issue of the continued existence of petitioners’ hospital which has been in continuous operation since 1941 under an annual license which had been renewed without interruption until February, 1963, at which time respondent refused to issue the annual license but instead issued a 90-day provisional license.
On November 9, 1962, the respondent notified petitioners that the annual license would not be renewed on February 15, 1963 unless the lease of the premises upon which the hospital is being operated and the sublease of space within those premises were amended to eliminate the percentage rentals provided therein. The lease and the sublease not having been so amended, the issuance of the annual license was withheld, and instead the afore-mentioned 90-day provisional license was issued.
The lease mentioned was entered into by the Kew Gardens Sanitarium, Inc., as tenant, and Kew Gardens Corp., as land *442 lord, on December 20, 1940 for a term of 21 years commencing January 1, 1941, with an option to renew for a further term of 15 years. The rental arrangement pursuant to this lease was based upon stated percentages of graduated gross receipts with a minimum base rental. That lease was modified by a written agreement executed on August 21, 1961 between the Kew Gardens Sanitarium, Inc., as tenant, and Kew Gardens Enterprises, as landlord. As modified, the lease was to expire on December 31, 1982, with an option to renew for an additional term of 15 years and the provision for the payment of rent based upon stated percentages of graduated gross receipts with a minimum base rental. The term “ gross receipts ”, as set forth in the modified lease, is identical with that description given in the original lease which had provided: ‘ ‘ The term ‘ gross receipts ’ * * * shall not be deemed to include receipts from patients for the use of the telephone other than service charges made by the hospital (not to include toll charges); receipts from x-ray or x-ray therapy, other than actual receipts by the hospital for the use of the x-rays, x-ray therapy, physiotherapy and pathology departments; receipts from patients for services of special nurses employed by them and/or supplied by the hospital; receipts from patients to cover for services of doctors employed by them. ’ ’
On December 15, 1955 a sublease was executed which by its terms authorized Doctors Fuhrman and Sumers, individually and as copartners, to conduct, operate and maintain a radiology department at this hospital at an annual rental of ‘ ‘ twenty-one and two tenths percent (21.2%) of the annual gross receipts of [the] Radiology Department ”. The term “annual gross receipts of the Radiology Department ”, as set forth in the instrument mentioned sets forth that the gross receipts ‘ ‘ shall be confined, solely to the said income derived from the Associated Hospital Service patients confined to the Kew Gardens Hospital, as aforesaid, all fees from private as well as compensation patients earned in the Radiology Department, and to all other professional fees earned in said Radiology Department, and to none other. ’ ’
In addition to resisting the issuance of a license to operate this hospital to the petitioners on the ground that the lease arrangement, as previously set forth, enables the landlord to participate in the proceeds of the practice of medicine, the respondent Commissioner in his answer alleges that the corporate petitioner is a stranger to the license which had previously been issued to the individual petitioner, Alphonse Ziviello; that the petitioner corporation had in effect perpetrated a fraud *443 upon the general public by representing that the licensee was doing business as the Kew Gardens General Hospital in an individual capacity while, in fact, the corporation was actively engaged in operating the hospital for profit, in violation of section 35-b of the Social Welfare Law.
As per direction of the Appellate Division of the Supreme Court, Second Department, this court upon the trial received testimony as offered by the petitioners and the respondent with the view toward determining (1) whether section 35-b of the Social Welfare Law prohibits the issuance of an annual license to operate this hospital and (2) whether the percentage lease arrangements entered into between Kew Gardens Sanitarium, Inc. and its landlord, and between Kew Gardens Sanitarium, Inc. and the operators of the radiology department at the hospital, serve as a basis for respondent’s refusal to renew the license to operate the hospital.
Section 35-b of the Social Welfare Law provided (L. 1961, ch. 572): “ Only physicians duly licensed by the state department of education and partnerships of such physicians may operate hospitals for profit, except such hospitals as are in operation on the date this section takes effect which are licensed pursuant to any law or are approved by the state department of social welfare. Notwithstanding the foregoing, any such partnership of two or more physicians may also include not more than one dentist duly licensed by the state department of education. ’ ’
While there is no question that this hospital was in operation long before April 4, 1956, the effective date of this section of the Social Welfare Law (as added by L. 1956, ch. 301), this fact does not reach the crux of the problem which is “ Who was the actual licensee on the effective, date of this section? ” Upon all the evidence as adduced at the trial the court is of the opinion that the corporate petitioner was actually the licensee prior to April 4, 1956. Despondent’s contention that either the individual petitioner Alphonse Ziviello or the previous agent of the petitioner corporation, Dr. Klein, was actually the licensee is, in this court’s opinion, incredible in light of the facts as presented at the trial. The designation of an agent by the petitioner corporation to receive the license for the operation of this hospital was necessitated by the ruling of the respondent. There can be no question that the respondent was aware of the petitioner corporation’s complete supervision and control of the hospital. It was the respondent’s ruling which directed the designation of an agent to receive the license for the petitioner corporation. In each application for the license to operate the *444 hospital, which had a term of one year, the respondent called upon the agent to disclose the name and officers of his corporate principal.
Under these circumstances, it is the determination of this court that the corporate petitioner falls within the express exception provided in section 35-b of the Social Welfare Law which exempts those hospitals “ as are in operation on the date this section takes effect which are licensed pursuant to any law or are approved by the state department of social welfare.” The express purpose of this clause was “ the protection of hospitals which on the effective date of the amendment, were legally operated by laymen or corporations.” (Matter of Yanover v. MacLean, 4 Misc 2d 379, 380.) In the case at bar any other construction of the statute would subvert the purpose of the law and produce a harsh and unjust result.
Both leases objected to by the respondent are almost identical in form and substance, each providing for a fixed guaranteed minimum rental plus a percentage of all gross receipts as set forth in the instruments previously mentioned.
Respondent contends that these leases, in view of his determination that the hospital practices medicine, permit the landlord to participate in the proceeds of the practice of medicine. It is the opinion of this court that the respondent’s position is not supported by the evidence as adduced at the trial. This landlord does not operate this hospital, nor does it have anything to say about its operation. There has been no showing that the landlord in any way exercises any control or has any right under the leases to interfere with the operation of any of the hospital facilities or has any voice in any of the policies adopted by the medical board under which the hospital is operated. The record makes it crystal clear that the landlord and the corporate petitioner dealt at arm’s length in executing the leases and neither their execution nor their terms are even suggestive of being other than as they appear. The court is unable to see how the percentage rental provisions place the landlord in any different position as far as the operation of the hospital is concerned than would fixed rental provisions.
It follows, then, that the gross receipts from which the rental charges are made for the operation of the radiology department by the corporate petitioner are not such as would require this court to arrive at a different determination. The radiologists are obligated to pay 21.2% of their gross receipts to the corporate petitioner, well below the statutory 33+%% maximum (Education Law, § 6514.) Thus, the sublease is neither unlawful nor unethical as between the corporate petitioner and its sub- *445 lessees. Under -these circumstances, it may not be said that the inclusion of the rent paid by the radiology department to the corporate petitioner in its gross receipts, upon which its percentage rental lease with Kew Gardens Enterprises is based, is improper or in violation of law.
In view of the foregoing, the respondent’s determination is annulled and the respondent is directed to issue an annual license for the operation of the hospital, as prayed for in the petition.